CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 24 2018

JULIA C. DUDLEY, CLERK
BY: [signature]
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **MICHAEL SCOTT PANNELL,** **Petitioner,** | ) | **Case No. 7:02cr00002** |
| **v.** | ) | **MEMORANDUM OPINION** |
| **UNITED STATES OF AMERICA,** **Respondent.** | ) | **By: Michael F. Urbanski** **Chief United States District Judge** |

This matter is before the court on Petitioner Michael Scott Pannell's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. ECF No. 39. Pannell asserts that he no longer qualifies as an armed career criminal under the Armed Career Criminal Act ("ACCA") because his predicate convictions no longer support such a designation following the Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015), ("Johnson II")[1], as well as recent Fourth Circuit case law. After careful review of the record, and in light of Johnson II, the court will deny Pannell's § 2255 motion, and grant the government's motion to dismiss.

## I.

On March 18, 2002, Pannell was convicted, following a trial, of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924(e) ("Count One"); possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) ("Count Two"); and possession of a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) ("Count Three"). ECF No. 16. A Presentence Investigation Report ("PSR") was created prior to sentencing. It recommended that Pannell be designated

[1] The court will refer to the Supreme Court's most recent Johnson decision as "Johnson II" in order to avoid confusion because in this opinion the court must also discuss a prior Supreme Court case, Johnson v. United States, 559 U.S. 133 (2010), which will be referred to as "Johnson I."

an armed career criminal based on the following convictions: a 1988 Virginia robbery conviction; a 1992 Virginia burglary conviction (two counts); a 1993 Virginia malicious wounding conviction; a 1993 Virginia accommodation to sell cocaine conviction (two counts); and a 1993 Virginia armed robbery conviction. PSR ¶¶ 29, 36, 41, 42, and 43, ECF No. 56. Because of the armed career criminal designation, the PSR recommended a total offense level of 37 and a criminal history category of VI, resulting in an advisory guideline range of 360 months' to life imprisonment for Counts One and Two. Id. ¶ 90. In addition, Pannell faced a statutory mandatory minimum sentence of 15 years' incarceration for Count One. Id. ¶ 83; 18 U.S.C. § 924(e)(2). Without the armed career criminal enhancement, Pannell would have faced a statutory maximum of ten years' incarceration for Count One. 18 U.S.C. § 924(a)(2). Pannell faced a statutory mandatory minimum of 60 months' incarceration on Count Three, to be served consecutively. 18 U.S.C. § 924(c)(1)(A)(i). The court adopted the PSR and sentenced Pannell to a total of 420 months' imprisonment.

Pannell appealed, arguing that the court improperly denied a motion to suppress evidence and that the prosecutor made improper closing arguments. United States v. Pannell, 77 F. App'x 188 (4h Cir. 2003). The Fourth Circuit denied his appeal. Id. Pannell filed a petition for a writ of certiorari to the Supreme Court of the United States, which was denied on March 22, 2004. Pannell v. United States, 541 U.S. 954 (2004). In addition, Pannell filed a prior § 2255 motion, alleging numerous court and counsel errors, which was denied. Pannell v. United States, 7:05cv147, 2005 WL 1667749 (W.D. Va. July 14, 2005).

On September 9, 2015, in accordance with Standing Order 15-5, the court appointed the Federal Public Defender's Office to represent Pannell with regard to any claim for relief

that he might have under § 2255 following the Johnson II decision. After receiving permission from the United States Court of Appeals for the Fourth Circuit to file a second or successive § 2255 motion, defense counsel filed this § 2255 motion alleging that Johnson II invalidated Pannell's ACCA-enhanced sentence because his Virginia predicate convictions for robbery, burglary, and malicious wounding no longer qualify as violent felonies. ECF No. 39.[2] The government responded, arguing that the Johnson II decision did not affect Pannell's predicate offenses, which continue to support his ACCA-enhanced sentence. On August 9, 2017, the court ordered additional briefing on whether Pannell's convictions for "Use of a Firearm in the Commission of a Felony," which accompanied both his malicious wounding and one of his robbery convictions, qualified as an ACCA predicate in its own right. ECF No. 57. Both defense counsel and the government have now responded to the court's order.

## II.

To state a viable claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States;" (2) that "the court was without jurisdiction to impose such sentence;" or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Pannell bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

[2] A duplicate § 2255 Petition filed prior to receipt of the Fourth Circuit's authorization, ECF No. 34, and accompanying Motion to Stay, ECF No. 35, are DENIED as MOOT.

## III.

### A. The ACCA Enhanced Sentence Structure

Pannell challenges the viability of many of the predicate offenses used to support his status as an armed career criminal. Federal law prohibits convicted felons from possessing firearms. 18 U.S.C. § 922(g). Defendants who violate this law are subject to a term of up to ten years' imprisonment. 18 U.S.C. § 924(a)(2). However, when defendants convicted of a § 922(g) charge have three or more prior convictions for "serious drug offenses" or "violent felonies," they qualify as armed career criminals under the ACCA. Armed career criminals face an increased punishment: a statutory mandatory minimum of fifteen years' imprisonment and a maximum of life. 18 U.S.C. § 924(e)(1).

In Johnson II, the Supreme Court invalidated part of the definition of "violent felony" under the ACCA. 135 S. Ct. at 2563. The ACCA defines a "violent felony" as:

> [A]ny crime punishable by imprisonment for a term exceeding one year . . . that –
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). In Johnson II, the Supreme Court reviewed the second part of subsection (ii) of the violent felony definition. It concluded that the clause, known as the "residual clause," which provides, "or otherwise involves conduct that presents a serious potential risk of physical injury to another," was unconstitutionally vague. 135 S. Ct. at 2563. The Supreme Court did not, however, strike down the other portions of the violent felony

definition, which include subsection (i), known as the "force clause," and the first part of subsection (ii), delineating specific crimes, known as the "enumerated crimes clause." Johnson II, 135 S. Ct. at 2563 (noting that other than the residual clause, the Court's holding "d[id] not call into question. . . the remainder of the [ACCA's] definition of a violent felony"). In addition, Johnson II did not affect the definition of "serious drug offenses," a conviction for which continues to support an enhanced ACCA sentence. Therefore, the Johnson II decision only limited the types of prior convictions that can act as predicate "violent felonies" under the residual clause. The Supreme Court's decision in Johnson II announced a new rule of constitutional law that applies retroactively to cases on collateral review. Welch v. United States, 136 S. Ct. 1257, 1268 (2016).

**B. Timeliness of Petition and Procedural Default**

A petition under § 2255 must adhere to strict statute of limitations requirements. Generally, a petitioner must file a § 2255 motion within one year from the date on which his judgment of conviction became final. 28 U.S.C. § 2255(f)(1). However, the statute allows for an additional one-year limitations period from the date on which the Supreme Court recognizes a new right made retroactively applicable on collateral review. Id. at § 2255(f)(3).

Pannell filed this § 2255 motion on June 23, 2016, more than one year from the date of his final judgment in 2005. Accordingly, his motion is untimely under § 2255(f)(1). However, the Fourth Circuit has held that a § 2255 motion is timely if it is filed within one year of Johnson II and if the defendant asserts that the sentence received "may have been predicated on application of the now-void residual clause and, therefore, may be [] unlawful." United States v. Winston, 850 F.3d 677, 682 (4th Cir. 2017). Pannell alleges that

his predicate convictions for Virginia burglary, robbery and malicious wounding no longer qualify as violent felonies following Johnson II based, in part, on the now-unconstitutional residual clause. § 2255 Mot. at 4, ECF No. 53. Because Pannell's sentence may have been predicated on the residual clause, he has "shown that he relies on a new rule of constitutional law," such that he satisfies the requirements of 28 U.S.C. § 2255(f)(3). Id. (internal quotation marks omitted). Therefore, the court must conclude that Pannell's petition is timely under § 2255(f)(3) as he filed it within one year of the Supreme Court's decision in Johnson II, 135 S. Ct. 2551, which issued on June 26, 2015. Id.

In addition, Pannell is not procedurally barred from bringing his claims. He did not challenge the constitutionality of the residual clause of the ACCA on direct review, which usually precludes collateral review on procedural grounds. Massaro v. United States, 538 U.S. 500, 504 (2003) (noting that claims not raised on direct appeal may generally not be raised on collateral review). However, the Fourth Circuit, in Winston, also rejected the government's "various related procedural arguments," and reached the merits of the petition. Id. at 682 n. 4. Accordingly, the court must conclude, in reliance on Fourth Circuit precedence, that Pannell's petition is not procedurally defaulted.

**C. Predicate Offenses and the ACCA**

Pannell asserts that he no longer has the requisite three predicate offenses necessary to support his ACCA-enhanced sentence. Pannell's PSR lists his predicate convictions as: two Virginia burglary convictions, a Virginia malicious wounding conviction; a Virginia drug conviction and a Virginia armed robbery conviction. While the court agrees that Pannell's

prior convictions for Virginia burglary and robbery do not support his status as an armed career criminal, he continues to have at least three predicates that support his sentence.

1. Convictions that No Longer Qualify as ACCA Predicates

Pannell has two convictions for Virginia burglary and one for Virginia robbery. These convictions no longer qualify as predicate offenses.

While some state burglary convictions continue to qualify as violent felonies under the enumerated crimes clause of the ACCA, which lists burglary specifically, Virginia burglary does not so qualify. For a burglary conviction to qualify under the ACCA, it must have been a conviction for "generic burglary," or "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." Taylor v. United States, 495 U.S. 575, 598 (1990). However, very recently, the Fourth Circuit has recognized that the Virginia burglary statute criminalizes conduct that falls outside of the generic definition, and the statute is also not divisible into generic and non-generic burglary crimes. Castendet-Lewis v. Sessions, 855 F.3d 253, 261 (4th Cir. 2017) (concluding that "it is clear that the Virginia burglary statute is indivisible"). Because the case law is now clear that Virginia burglary is, on the one hand, broader than generic burglary, and on the other hand, indivisible, a Virginia burglary conviction can no longer support an ACCA enhanced sentence. See United States v. Hadsell, 692 Fed. App'x 161, 161 (4th Cir. 2017) (vacating and remanding a defendant's sentence because a prior Virginia burglary conviction had been used to support an enhanced ACCA sentence and noting that a "Virginia statutory burglary conviction does not qualify as the ACCA-enumerated offense of 'burglary'").

Another predicate offense used to support Pannell's ACCA enhancement was a Virginia conviction for common law robbery. In order for a robbery conviction to qualify as a violent felony for ACCA purposes, it must fall under the "force clause" and have "as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). The Supreme Court has defined "physical force" as "violent force . . . capable of causing physical pain or injury to another person." Johnson I, 559 U.S. at 140. The Fourth Circuit has concluded that Virginia convictions for common law robbery cannot support an ACCA-enhanced sentence following Johnson II because such a conviction can result without the use of violent force. Winston, 850 F.3d at 686. Accordingly, Pannell's Virginia robbery conviction also does not support his status as an armed career criminal.

2. Convictions that Qualify as ACCA Predicates

Pannell's conviction for drug accommodation, malicious wounding, and use or display of a firearm during the commission of a felony continue to qualify as predicates under the ACCA. Accordingly, his sentence was proper.

*a. Drug Conviction*

Pannell does not contest that his prior Virginia drug conviction for two counts of accommodation to sell cocaine qualifies as a predicate.[3] Accordingly, the court assumes that this conviction satisfies the requirements of a "serious drug offense," for ACCA purposes.

[3] A drug conviction that involves two criminal counts can qualify as two "serious drug offenses," for ACCA purposes, if those offenses are punishable by ten years or more incarceration and occurred on occasions separate from one another. 18 U.S.C. § 924(e)(1) and (e)(2)(A). At his sentencing, there was no evidence presented regarding the maximum punishment applicable for these crimes or whether they occurred on occasions separate from one another, as there was no need because Pannell had has so many other

*b. Malicious Wounding*

Pannell has a 1993 Virginia conviction for malicious wounding. Virginia Code § 18.2-51 defines both malicious wounding and unlawful wounding:

> If any person maliciously shoot, stab, cut or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable or kill, he shall, except where it is otherwise provided, be guilty of a Class 3 felony. If such act be done unlawfully but not maliciously, with the intent aforesaid, the offender shall be guilty of a Class 6 felony.

Va. Code § 18.2-51. Because malicious wounding is not a crime listed in the "enumerated crimes clause" of the ACCA, it can qualify as a violent felony only under the "force clause." The court begins by considering the offense generally under a "categorical approach." Winston, 850 F.3d at 683. Under this approach, a court must assess whether a crime qualifies as a violent felony by looking "only to the fact of conviction and the statutory definition of the prior offense" and not how a particular offender might have committed the crime on a particular occasion. Taylor v. United States, 495 U.S. 575, 602 (1990). In applying the categorical approach to determine whether a prior conviction qualifies as a predicate offense under the force clause of the ACCA, the court must determine whether the state crime necessarily involves the use, attempted use, or threatened use of physical force against another person. United States v. Gardner, 823 F.3d 793, 801 (4th Cir. 2016). Such a determination focuses on "the minimum conduct necessary for a violation" of the statute under state law. Castillo v. Holder, 776 F.3d 262, 267 (4th Cir. 2015).

Only when a statute is divisible, that is, it sets forth multiple distinct crimes, at least one of which, but not all, requires the necessary force to satisfy the force clause, should a court apply a "modified categorical approach." Mathis v. United States, 136 S. Ct. 2243, 2249 (2016). The

---

qualifying predicate offenses. Without the necessary documents to determine whether the two drug counts should qualify as separate predicates, the court will construe them as one conviction for ACCA purposes.

modified categorical approach allows a court to look more closely at the defendant's particular criminal conduct in order to determine which of the alternate crimes set forth in the statute was the one for which the defendant was actually convicted. Id. In order to determine the particular crime at issue, a court may consult a limited array of documents, including charging documents, plea agreements, transcripts of plea colloquies, among others. Shepard v. United States, 544 U.S. 13, 25 (2005) (plurality opinion).

Pannell argues that the statute is not divisible, and that it merely sets forth multiple means of committing one crime. § 2255 Mot. at 28, ECF No. 34. The government asserts that the statute is divisible, citing to cases that have so held, and the modified categorical approach may be used to determine the particular crime to which Pannell pleaded guilty.[4] U.S. Resp. at 24, ECF No. 49. However, the government also argues that each of the crimes created by the statute involves the type of violent force necessary to qualify as an ACCA predicate under the force clause, so the distinction between divisible and indivisible, in this context, is unnecessary. See United States v. Cabrera-Umanzor, 728 F.3d 347, 352 (4th Cir. 2013) (noting that "a statute is divisible for purposes of applying the modified categorical approach only if at least one [but not all] of the categories into which the statute may be divided constitutes, by its elements," a violent felony). The court agrees.

The type of wounding and bodily injury required to sustain a conviction under Virginia Code § 18.2-51 necessarily satisfies the "force clause" of the ACCA. In order for a conviction to qualify as an ACCA predicate under the force clause, the offense must involve

[4] Various courts have concluded that the Virginia malicious wounding statute is divisible into various different crimes. For instance, one court has concluded that the statute creates four separate crimes: 1) malicious wounding; 2) maliciously causing bodily injury; 3) unlawful wounding; and 4) unlawfully causing bodily injury. United States v. Carter, No. 2:08cr527, 2013 WL 5353055, at *2 (E.D. Va. Sept. 24, 2013). Another court has concluded that the statute creates two separate crimes: 1) malicious wounding; and 2) unlawful wounding. Singh v. Holder, 568 F.3d 525, 528 (5th Cir. 2009).

"violent force—that is, force capable of causing physical pain or injury to another person." Johnson I, 559 U.S. at 140.

A conviction under § 18.2-51 requires "maliciously shoot[ing], stab[bing], cut[ting] or wound[ing] any person or by any means caus[ing] him bodily injury." Virginia courts have made clear that such actions involve physical injury. In this context, the court must apply the Virginia courts' interpretation of a Virginia statute. Johnson I, 559 U.S. at 138 (noting that in interpreting a state statute, a court is "bound by the [state] Supreme Court's interpretation"); Winston, 850 F.3d at 684. While shooting, stabbing, and cutting obviously involve physical injury, even wounding—potentially the least violent conduct that still could result in a conviction—requires the type of physical force necessary under the ACCA. The Court of Appeals of Virginia has concluded that "to prove the existence of a 'wound,' the Commonwealth must show that the victim's skin was broken or cut." Johnson v. Commonwealth, 58 Va. App. 303, 316, 709 S.E.2d 175, 182 (2011). In addition, it has defined "bodily injury," as "any detriment, hurt, loss, [or] impairment that could fairly be considered an injury to the human body." English v. Commonwealth, 58 Va. App. 711, 718-19, 715 S.E.2d 391, 395 (2011) (internal quotation marks omitted). Therefore, the type of harm required to satisfy both 18 U.S.C. § 924(e)(2)(B)(i) and Virginia Code § 18.2-51 is the same, a physical injury to a person's body.

The defense argues, however, that a defendant can wound or cause bodily harm indirectly, which would not involve "violent" force against the "person" of another. § 2255 Mot. at 19-21, 25-26, ECF No. 34. The defense relies on two prior court cases that concluded that it is possible to inflict bodily injury without the use of "violent force," such

as through the use of poison or other means of deceit. United States v. Torres-Miguel, 701 F.3d 165, 169 (4th Cir. 2012) (concluding that a crime can result in death or serious injury without involving the use of physical force, such as poison); United States v. Lopez-Reyes, 945 F. Supp. 2d 658, 661 (E.D. Va. 2013) (concluding that a that a person could cause bodily injury through the use of poison, or other means of deceit, which would support a conviction under Va. Code § 18.2-51, but would not involve "violent force").

However, following these decisions, the Supreme Court has considered what it means to "use" physical force. United States v. Castleman, 134 S. Ct. 1405, 1409 (2014). Although the Castleman court declined to reach the question of "[w]hether or not the causation of bodily injury necessarily entails violent force," it rejected the idea that a defendant does not use force by indirectly causing harm, as through the use of poison, instead concluding that "[i]t is impossible to cause bodily injury without applying force in the common-law sense." Id. at 1415. The Fourth Circuit has concluded "by applying the combination of Johnson[I] and Castleman . . . that ACCA's phrase "use of physical force" includes force applied directly or indirectly." United States v. Reid, 861 F.3d 523, 529 (4th Cir. 2017). Accordingly, Pannell's argument that the use of indirect force cannot satisfy the ACCA's force clause is unavailing.

Moreover, the court concludes that a defendant who inflicts "bodily injury" sufficient for a conviction for malicious wounding to stand, also satisfied the force requirement under the ACCA. The court cannot conceive of a scenario in which a defendant inflicts "bodily injury" without using "force capable of causing physical pain or injury." See Castleman, 134 S. Ct. at 14016-17 (Scalia, J., concurring in part and concurring in the judgment) (concluding

that ". . . it is impossible to cause bodily injury without using force 'capable of' producing that result").

Accordingly, a conviction for malicious wounding under Va. Code § 18.2-51 necessarily requires violent force capable of causing physical pain or injury and continues to qualify as a predicate offense under the ACCA. Therefore, Pannell's malicious wounding conviction supports his ACCA-enhanced sentence.

*c. Use or Display of a Firearm During and In Relation to a Felony*

Finally, Pannell has two convictions for use of a firearm in commission of a felony, in violation of Virginia Code § 18.2-53.1. One of those convictions accompanies his 1993 Virginia malicious wounding conviction, and the other one accompanies his 1993 robbery conviction. PSR ¶¶ 41, 43, ECF No. 56. It is unlikely these convictions were considered separate predicates at the time that Pannell was sentenced, because he already had more than three predicate offenses for ACCA purposes. However, the court must look to the whole record to determine whether a defendant retains three predicate offenses. See United States v. Pettiford, 612 F.3d 270, 278 (2010) (noting that when a defendant establishes that a predicate offense no longer supports his ACCA-enhanced sentence, a court must determine whether "three predicate convictions remain[] . . ."). A full review of Pannell's criminal history is especially necessary where many of the original predicate offenses no longer support his ACCA sentence. With only his drug and malicious wounding convictions still viable ACCA predicates, Pannell qualifies as an armed career criminal only if a conviction under Virginia Code § 18.2-53.1 qualifies as a violent felony. The court concludes that it does.

Virginia Code § 18.2-53.1 provides:

> It shall be unlawful for any person to use or attempt to use any . . . firearm or display such weapon in a threatening manner while committing or attempting to commit [certain enumerated offenses that include robbery and malicious wounding]. Violation of this section shall constitute a separate and distinct felony . . . .

Both the defense and the government agree that the statute is indivisible and that the court should apply a categorical approach to the statute. The court need not make this determination, however, because just as with malicious wounding, each of the possible crimes created by the statute involves violent force or the threat of violent force necessary to qualify as a violent felony. See 18 U.S.C. § 924(e)(2)(B)(i) (a crime qualifies as a violent felony under the force clause if it "has as an element the use, attempted use, or threatened use of physical force against the person of another"); Johnson I, 559 U.S. at 140 ("We think it clear that in the context of a statutory definition of 'violent felony,' the phrase 'physical force' means violet force—that is, force capable of causing pain or injury to another person.").

Turning to state court interpretations of Virginia Code § 18.2-53.1, as the court must, it is clear that using, attempting to use, or displaying a firearm during the commission of a felony, such as malicious wounding or robbery, involves the use, attempted use or threatened use of violent physical force capable of causing pain or injury. The Supreme Court of Virginia has made clear that "the Commonwealth must prove that the accused actually had a firearm in his possession and that he used or attempted to use the firearm or displayed the firearm in a threatening manner while committing or attempting to commit robbery or one of the other specified felonies." Yarborough v. Commonwealth, 247 Va. 215, 218, 441 S.E.2d 342, 344 (1994). "A person 'uses' a firearm if he or she employs it." Rowland v. Commonwealth, 281 Va. 396, 401, 707 S.E.2d 331, 334 (2011). "Once the

object satisfies the definition of a firearm, any use of the firearm that is intended to cause physical injury is a violation Code § 18.2-53.1." Rose v. Commonwealth, 53 Va. App. 505, 512-13, 673 S.E.2d 489, 492 (2009). Moreover, "[a] person 'displays' a firearm if he or she manifests it to any of the victim's senses." Rowland, 281 Va. at 401, 707 S.E.2d at 334 (internal quotation marks omitted). The potential for violence or threat of physical force is inherent in the presentation of a firearm. See Cox v. Commonwealth, 218 Va. 689, 691-92, 240 S.E.2d 524, 526 (1978) (noting that a firearm "by its nature and design" is "capable of inflicting death or great bodily injury").

A review of Virginia case law establishes that even the minimum conduct necessary to allow for a conviction under Virginia Code § 18.2-53.1 requires the type of violent force, or threatened violent force necessary under the ACCA and Johnson I. The case of Rowland v. Commonwealth, 281 Va. at 396, 707 S.E.2d at 331, is instructive. In Rowland, the Virginia Supreme Court concluded that the defendant was not guilty of displaying a firearm while committing burglary because there was no evidence that Rowland used or displayed the firearm when gaining entry to the restaurant. Id. at 402, 707 S.E.2d at 334. Instead, employees of the restaurant first saw Rowland pointing a gun at them after he had entered the premises. Id. Because the burglary had been completed before anyone actually saw the gun, Rowland had not used or displayed it while committing the underlying felony. Rowland establishes that a defendant must actively employ or threaten the use of a firearm—with the concomitant infliction or threat of violent physical force—in order for a conviction under Virginia Code § 18.2-53.1 to stand.

The defense points to a Virginia Court of Appeals case, Smith v. Commonwealth, 61 Va. App. 690, 694, 739 S.E.2d 280, 282 (2013), which followed Rowland, for the proposition that a victim need not know that the defendant has a firearm in order for a conviction under Va. Code § 18.2-53.1 to adhere. However, Smith does not so establish. In Smith, the victim heard someone knocking at her door. As she walked toward the door, the victim saw Smith and others, who were masked, push the door open and enter. Id. "As soon as appellant entered, [the victim] noticed [Smith] was holding a firearm 'down at his side,'" which prompted the victim to begin screaming. Id. Because the victim saw the gun immediately after witnessing Smith enter her residence, the Virginia Court of Appeals concluded that the evidence could sustain a conviction under Virginia Code § 18.2-53.1.

The defense argument that the minimum conduct necessary for a violation of § 18.2-53.1 is insufficient to satisfy the force clause of the ACCA is without merit because any display of a firearm constitutes a threat of violent physical force. Virginia law establishes both that "possession of a firearm is an essential element of the statutory offense," of Virginia Code § 18.2-53.1, Yarborough, 247 Va. at 219, 441 S.E.2d at 344, and that the victim must be made aware that the defendant has a firearm, Cromite v. Commonwealth, 3 Va. App. 64, 67-68, 348 S.E.2d 38, 40 (1986). While the firearm need not be a functioning weapon, the display of something that appears to be a functioning firearm is sufficient to satisfy the statute as a "sensible" victim "acts on appearances" and understands that firearms have the potential to inflict serious bodily harm. Johnson v. Commonwealth, 209 Va. 291, 296, 163 S.E.2d 570, 574 (1968).

The Virginia Supreme Court has recognized that the purpose of § 18.2-53.1 is to deter violent crimes. Ansell v. Commonwealth, 219 Va. 759, 762, 250 S.E.2d 760, 762 (1979). "The statute not only is aimed at preventing actual physical injury or death but also is designed to discourage conduct that produces fear of physical harm." Holloman v. Commowealth, 221 Va. 196, 198, 269 S.E.2d 356, 358 (1980); accord Taylor v. Commonwealth, Record No. 1390-16-2, 2018 WL 326544, *4 (Va. App. Jan 9, 2018) (noting that the purpose of the statute is to prevent both violent criminal conduct and the resulting fear of physical harm).

Plainly, a conviction under Virginia Code § 18.2-53.1 for use or display of a firearm in committing a felony, qualifies as a violent felony under the force clause of the ACCA. As a result, Pannell retains the requisite three predicate convictions to support his ACCA-enhanced sentence.

## IV.

For the reasons stated, the court **GRANTS** the government's amended motion to dismiss, ECF No. 49, and **DISMISSES** Pannell' motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, ECF No. 39. Because Pannell has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c) and Slack v. McDaniel, 529 U.S. 473, 484 (2000), a certificate of appealability is **DENIED**.

**ENTER:** This 24th day of January, 2018.

/s/ Michael F. Urbanski

Chief United States District Judge